[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-14106
Non-Argument Calendar

_____

D.C. Docket No. 4:13-cr-00010-RH-CAS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee
Cross Appellant,

versus

KIMBERLY WATSON,

Defendant-Appellant
Cross Appellee,

SHAVONE RICKETTS,

Defendant-Appellant.

_____

No. 13-15877
Non-Argument Calendar

_____

D.C. Docket No.  4:13-cr-00010-RH-CAS-2

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

MALCOLM LIPSCOMB,

Defendant-Appellee.

_____

Appeals from the United States District Court
for the Northern District of Florida
_____

(June 5, 2017)

Before MARTIN, ROSENBAUM, and ANDERSON, Circuit Judges.

PER CURIAM:

In this consolidated multi-defendant appeal, Kimberly Watson and Shavone Ricketts appeal their convictions arising out a scheme to file false income-tax returns. A jury found them guilty of a number of offenses, including conspiracy to defraud the government, in violation of 18 U.S.C. § 286; filing false claims, in violation of 18 U.S.C. § 287; wire fraud, in violation of 18 U.S.C. § 1343; and aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1). On appeal, they contend that the district court abused its discretion at trial by admitting evidence of

2

seven fraudulent tax returns not charged as substantive counts in the indictment.[1] Watson also contends that the district court erred when it admitted evidence that was seized from her purse without a warrant.

The government has cross-appealed the sentences of Watson and codefendant Malcolm Lipscomb, arguing that the district court erred in calculating their guideline ranges. The government contends that the court erroneously declined to apply a two-level enhancement for the number of victims, under U.S.S.G. § 2B1.1(b)(2), based on an interpretation of guidelines commentary relating to aggravated-identity-theft cases which this Court has since rejected.

We affirm the convictions of Watson and Ricketts. The district court did not abuse its discretion by admitting evidence of the tax returns, and Watson has waived any argument that evidence from her purse should have been suppressed because she failed to seek suppression in the district court. We vacate the sentences of Watson and Lipscomb and remand for resentencing.

## I. Admission of Uncharged Tax Returns (Watson & Ricketts)

A federal grand jury returned a 46-count indictment charging Watson, Ricketts, Lipscomb, and Alfretta Jones with numerous offenses arising out of a

---

[1] Watson's arguments on this issue come from a brief filed by her trial counsel before we granted Watson's *pro se* motion to discharge and appoint substitute counsel. Substitute counsel then filed a "supplemental" brief which does not raise the evidentiary issue regarding the tax returns. As such, it is unclear if Watson still wishes to raise this issue on appeal. Out of an abundance of caution, and because Ricketts raises the same issue, we address the issue as if it applies to both Watson and Ricketts.

3

scheme to file false income-tax returns in other persons' names.  The case against them involved a total of twenty-seven false tax returns, twenty of which were charged as substantive offenses (mainly wire fraud and filing false claims).  The remaining seven tax returns were not charged as substantive offenses (the "uncharged returns"), but were instead offered as evidence in support of the conspiracy count.[2]  After Jones pled guilty, 43 counts remained to be tried against Watson, Ricketts, and Lipscomb at trial.

Before trial, the government moved *in limine* to obtain a ruling on the admissibility of evidence regarding the uncharged returns.  The government argued that this evidence did not implicate Rule 404(b) because it was intrinsic to the conspiracy offense.  To the extent the evidence constituted extrinsic evidence of other wrongs, the government contended, it was admissible under Rule 404(b) as relevant to intent and knowledge.

In response, Watson and Ricketts argued that the uncharged returns, which in their view were not intrinsic to the conspiracy, should be excluded as unfairly prejudicial.  Watson and Ricketts asserted that the uncharged returns would have a "spill-over effect," making it more likely that the jury would convict on weaker substantive counts due simply to the uncharged conduct.  They also contended that

---

[2] To be clear, the seven tax returns at issue were alleged in the indictment, but they were not the bases for substantive offenses like the other twenty tax returns.

4

introducing the collateral evidence was not necessary to the government's case and would confuse the jury.

During a pre-trial conference on the motion *in limine*, the district court concluded that the uncharged returns were relevant and admissible as evidence of the conspiracy itself or as inextricably intertwined with the conspiracy and the substantive counts.  Further, the court concluded that, even if the evidence were deemed other-act evidence under Rule 404(b), it would still be admissible on the issues of intent and knowledge.

Following a five-day trial, the jury found Watson guilty of Counts 1, 2–9, 11,12, 14–16, 18–30, and 33–42, and not guilty of Counts 13, 31, and 32.  Ricketts was found guilty of Counts 1, 17, 40, 41, and 43, and not guilty of Counts 11–16, 18–39, and 42.  The district court sentenced Watson to a total of 48 months of imprisonment, Ricketts to a total of 36 months of imprisonment, and Lipscomb to a total of 60 months of imprisonment.  Each of the total sentences included a mandatory consecutive sentence of 24 months for aggravated identity theft.  This appeal followed.

## A.    *Standard of Review*

Generally, we review a district court's evidentiary rulings for an abuse of discretion. *United States v. Troya*, 733 F.3d 1125, 1131 (11th Cir. 2013).  An abuse of discretion occurs if the district court applies an incorrect legal standard, relies on

5

clearly erroneous facts, or makes a clear error in judgment. *See United States v. Wilk*, 572 F.3d 1229, 1234 (11th Cir. 2009).

## B.    Discussion

Watson and Ricketts do not challenge the district court's determinations that evidence regarding the seven uncharged tax returns was admissible as direct evidence of the charged conspiracy, as inextricably intertwined with the conspiracy and the substantive counts, or as permissible Rule 404(b) evidence on the issues of intent and knowledge. Accordingly, they have abandoned any issue as to the bases for admission. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014) (issues not raised on appeal are abandoned).

Instead, Watson and Ricketts argue that the evidence, though admissible, should have been excluded under Rule 403, Fed. R. Evid., due to the potential for jury confusion. They contend that the case was already complex and confusing to begin with from an evidentiary perspective—based on the number of tax returns at issue and the way that the government charged the case—and that the government exacerbated that level of confusion at trial by presenting the evidence in a generalized fashion and failing to distinguish between the returns underlying the substantive counts and the uncharged returns. In the appellants' view, this confusing presentation of the evidence gave rise to the possibility of a verdict based on generalized reasoning rather than proof specific to the substantive counts.

6

The appellants also assert that the probative value of the evidence was low because the uncharged returns were not necessary to prove either the conspiracy count or the defendants' intent. In short, the evidence, in the appellants' view, should have been excluded under Rule 403.

"All admissible evidence, whether intrinsic or extrinsic, must be weighed against Rule 403 prejudice." *Troya*, 733 F.3d at 1131. Federal Rule of Evidence 403 permits a court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

We have stated that "Rule 403 is an extraordinary remedy which the district court should invoke sparingly, and the balance should be struck in favor of admissibility." *United States v. Lopez*, 649 F.3d 1222, 1247 (11th Cir. 2011) (internal quotation marks omitted). "[T]he balance to be struck is largely committed to the discretion of the district court, which has far more experience in evidentiary matters and is better equipped to decide them than an appellate court." *Id.* Because the district court is in a better position to weigh competing concerns under Rule 403 in light of the specific facts of the case before it, "we will find that the district court abused its discretion under Rule 403 in only the rarest of situations." *Id.*

7

Here, the district court did not abuse its discretion by admitting the evidence of the uncharged tax returns. For starters, the uncharged returns were probative evidence. The conspiracy count alleged that Watson, Ricketts, and their codefendants conspired to defraud the government by filing false income-tax returns in the names of other persons between 2009 and 2012. To the extent the returns were offered as evidence of that conspiracy, the returns were "direct evidence that [Watson and Ricketts] had committed the crime with which [they were] charged, and direct evidence of guilt may not be excluded under Rule 403." *Id.* at 1248.

Moreover, the uncharged returns were probative evidence because they were clearly linked in time and circumstances with the substantive offenses and the fraudulent scheme.[3] *See United States v. Wilson*, 788 F.3d 1298, 1314 (11th Cir. 2015) (holding that the district court did not abuse its discretion in admitting evidence of 31 uncharged tax refund checks as intrinsic to the charged crimes). In *United States v. Ford*, 784 F.3d 1386, 1394 (11th Cir. 2015), for example, we upheld the admission of testimony from nine victims concerning tax returns that were not charged in the indictment. Because "[t]he testimony of the additional victims concerned fraudulent tax returns that were filed by Ford, during the same time period, and using the same methods," we concluded that it was "probative

---

[3] We also agree with the district court that the returns would have been admissible under Rule 404(b) as relevant to the intent and knowledge.

evidence inextricably intertwined with the scheme charged in the indictment." *Id.* As in *Ford*, the uncharged returns in this case concerned fraudulent tax returns that were filed during the same time period and using the same methods as the substantive offenses. *See id.*

Even assuming that the seven uncharged tax returns added some additional degree of confusion to the case, which involved twenty false tax returns charged as substantive offenses, it was not enough to "substantially outweigh[]" the probative value of the evidence. *See* Fed. R. Evid. 403. Watson and Ricketts offer no compelling reason to suspect that the jury actually was confused by the government's presentation of the evidence. In fact, the jury returned not guilty verdicts on a number of counts against both Watson and Ricketts, which suggests that the jury evaluated each count based on the proof specific to that count and did not rely on generalized reasoning. Overall, we see no basis in the record to conclude that the district court made a clear error of judgment in striking the balance under Rule 403 in favor of admissibility. *See Lopez*, 649 F.3d at 1247.

Finally, Watson and Ricketts assert in passing that the district court could have remedied any potential confusion by providing a limiting instruction to the jury, but such passing references are not sufficient to raise an issue on appeal. *See Sapuppo*, 739 F.3d at 681–82. In any case, after discussing the issue with the district court, and in light of the court's ruling that the seven uncharged returns

9

were admissible as evidence of the conspiracy, defendants' attorneys asked the court not to give a limiting instruction.  Accordingly, they invited any error caused by the lack of a limiting instruction.  *See United States v. Love*, 449 F.3d 1154, 1157 (11th Cir. 2006) ("It is a cardinal rule of appellate review that a party may not challenge as error a ruling or other trial proceeding invited by that party.") (quotation marks omitted).

For these reasons, the district court did not abuse its discretion by admitting evidence of the seven false tax returns not charged as substantive offenses.

## II.  Suppression (Watson)

Watson argues that the evidence obtained from a search of her purse, which was found during a search of Ricketts's car, should have been suppressed because police did not obtain a warrant to search her purse.  However, "[m]otions to suppress illegally obtained evidence must be made prior to trial or such objections are deemed waived, Fed. R. Crim. P. 12(b)(3), though this waiver may be excused for good cause."  *United States v. Lall*, 607 F.3d 1277, 1288 (11th Cir. 2010).  Here, Watson did not move to suppress or otherwise object to the admission of the evidence seized from her purse, and she offers no grounds for excusing that failure.  Because she failed to file a timely suppression motion, she "cannot raise that claim for the first time on appeal."  *Id.* (quotation marks omitted).  Accordingly, we do not address her arguments on this issue.

### III.  Government's Cross-Appeal (Watson & Lipscomp)

In its cross-appeal, the government argues that the district court miscalculated the guideline ranges for both Watson and Lipscomb.  We review *de novo* the district court's legal interpretation of the Sentencing Guidelines.  *United States v. Zaldivar*, 615 F.3d 1346, 1350 (11th Cir. 2010).  In most cases, an incorrectly calculated guideline range is grounds for reversal.[4]  *See United States v. Bonilla*, 579 F.3d 1233, 1245 (11th Cir. 2009).

Watson's and Lipscomb's guideline ranges were calculated under U.S.S.G. § 2B1.1.  Section 2B1.1(b)(2) instructs courts to apply a two-level increase to the offense level if the offense involved ten or more victims.  U.S.S.G. § 2B1.1(b)(2).  The district court in this case declined to apply § 2B1.1(b)(2), relying on commentary to the aggravated identity-theft guideline, specifically Application Note 2 to § 2B1.6.  Application Note 2 states that where a sentence for aggravated identity theft is imposed in conjunction with a sentence for the underlying offense, such as mail fraud or filing false claims, the court should not apply any specific offense-characteristic enhancements for "the transfer, possession, or use of a means of identification when determining the sentence for the underlying offense."  U.S.S.G. § 2B1.6 cmt. n.2.  The court reasoned that this commentary prevented the

---

[4] Guideline-calculation errors may in some circumstances be considered harmless.  Here, however, the district court helpfully indicated that the sentences should be vacated if we determined that the court erred.

11

application of § 2B1.1(b)(2) in this case because the number-of-victims enhancement applied only because the victim's means of identification had been "used." *See* U.S.S.G. § 2B1.1 cmt. n.4(E)(ii) (defining a "victim" as, among other things, "any individual whose means of identification was used unlawfully or without authority").

After the district court sentenced the defendants in this case, however, we held in *Ford* that § 2B1.6 "does not prohibit a sentence enhancement for the number of victims under Section 2B1.1(b)(2) for any non-aggravated identity theft offenses charged, such as mail fraud or making a false claim." 784 F.3d at 1397–98. Thus, "[f]or offenses governed by Section 2B1.1, like mail fraud and false claims, an enhancement is permitted under Section 2B1.1(b)(2) based on the number of victims, even where the indictment also charges aggravated identity theft." *Id.* at 1397.

Accordingly, based on *Ford*, the district court erred by not applying the enhancement for number of victims under § 2B1.1(b)(2). *See id.* at 1397–98. Lipscomb's argument that *Ford* makes it permissible, but not mandatory, to apply the enhancement is off the mark. The district court's responsibility to properly calculate the guideline range is not discretionary. *See Bonilla*, 579 F.3d at 1245. If the court then chooses in its discretion to vary from the guideline range, whether based on a policy disagreement with the guidelines or based on the specific facts of

12

the defendant's case, it may do so, but in any case, it must first correctly calculate the guideline range. *See, e.g.*, *United States v. Irey*, 612 F.3d 1160, 1188 (11th Cir. 2010) (*en banc*). Accordingly, we vacate Watson's and Lipscomb's total sentences and remand for further proceedings.

## IV.

In sum, we affirm Watson's and Ricketts's convictions because the district court did not abuse its discretion by admitting evidence of false tax returns not charged as substantive counts in the indictment. We do not address Watson's suppression arguments because she raises them for the first time on appeal.

As for the government's cross-appeal, we conclude that the district court erred by not applying the enhancement for number of victims under U.S.S.G. § 2B1.1(b)(2). Therefore, we vacate the total sentences of Watson and Lipscomb and remand for resentencing as appropriate under the circumstances.

**AFFIRMED IN PART; VACATED IN PART AND REMANDED FOR FURTHER PROCEEDINGS.**